**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **JEFFREY ALLGOOD,** | **CASE NO 1:12CV1513** |
| Plaintiff, | |
| | **JUDGE DONALD C. NUGENT** |
| v. | |
| **MICHAEL J. ASTRUE,** | **MAGISTRATE JUDGE GREG WHITE** |
| **Commissioner of Social Security,** | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Jeffrey Allgood ("Allgood") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be vacated and the case remanded.

**I. Procedural History**

In June, 2008, Allgood filed an application for DIB, POD, and SSI alleging a disability onset date of August 23, 2007, and claiming that he was disabled due to chronic back and leg pain.[1] (Tr. 193.) His application was denied both initially and upon reconsideration.

On September 15, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Allgood, represented by counsel, and an impartial vocational expert ("VE") testified. On October 20, 2010, the ALJ found Allgood was able to perform a significant number of jobs in the

---

[1]Allgood had previously filed applications on February 8, 1993, February 21, 1996, October 10, 1996, August 15, 1997, December 7, 2001, and May 22, 2003, all of which were denied. (Tr. 21.)

national economy and, therefore, was not disabled. The ALJ's decision became final when the Appeals Council denied further review.[2]

## II. Evidence

### *Personal and Vocational Evidence*

Age 49 at the time of his administrative hearing, Allgood was a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963 (c). Allgood has a limited education and past relevant work as a machine operator. (Tr. 30.)

### *Hearing Testimony*

At the hearing, Allgood testified to the following:

- He lives with his wife and two children. (Tr. 47.)

- His driver's license is suspended. *Id.*

- He completed the tenth grade and has no vocational training or military service. (Tr. 48.)

- He experiences pain in his lower back and legs, as well as in his hands, shoulder, and knees. (Tr. 50.) He could grip a gallon of milk, but could not hold it. *Id.* His hand cramps when he tries to write with a pen. (Tr. 50-51.)

- He continues to take OxyContin, Vicodin and Valium which help the pain, but he experiences drowsiness and dizziness. (Tr. 49.)

- It is difficult to sit or stand for a long period of time due to the pain, unless he is "drugged up," as he was during the hearing. *Id.*

- He can stand for five minutes and sit for five minutes. (Tr. 57-58.) He then has to lie down on his back before he could stand again. (Tr. 58.)

- Each morning he checks his sugar level, takes his medications, while his wife prepares his breakfast. (Tr. 51-52.) His wife also helps him get dressed. (Tr. 52-53.) After his wife leaves for work, his daughter comes to the house to help during the day and makes his lunch. (Tr. 52.)

- He does not do any of the housework. (Tr. 53.) His son will take out the trash while his wife and daughter do the laundry. *Id.* He does not do any grocery shopping. (Tr. 53.) Other than his immediate family members, he has no visitors and does not talk on the telephone. (Tr. 54.)

- He does not have a computer. *Id.* He used to fish and hunt, but his only hobby

---

[2]In federal district court, case number 1:09cv2192, Allgood appealed the denial of his May 22, 2003 application. (Tr. 21.) According to the court docket, it was dismissed without prejudice on January 11, 2010.

now is watching television. *Id.*

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Allgood was insured on his alleged disability onset date, August 23, 2007 and remained insured through September 30, 2009. (Tr. 21.) Therefore, in order to be entitled to POD and DIB, Allgood must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and

---

[3]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

416.1201.

## IV. Summary of Commissioner's Decision

The ALJ found Allgood established medically determinable, severe impairments, due to status post lumbosacral spine strain/sprain, degenerative joint disease of the right knee, and status post left shoulder surgery; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Allgood was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of sedentary work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Allgood was not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the

Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

### *Weight Given to Physicians' Opinions*

Allgood contends that the ALJ failed to provide reasons for rejecting the opinions of two treating physicians. (Doc. No. 14 at 8-12.)

Bradley Barker, M.D., a treating physician from November, 2006 through January, 2009, completed a physical RFC finding on October 28, 2008, which indicated that Allgood could stand/walk two hours in an eight-hour workday, sit four hours in a workday, but sit only one hour without interruption. (Tr. 440.) Dr. Barker further found that Allgood was extremely limited in bending and moderately limited in the ability to push/pull, reach, and perform

5

repetitive foot motions. *Id.* Dr. Barker indicated that Allgood's limitations were expected to last twelve months or more and that he was unemployable. *Id*.

In November, 2009, Allgood established care with Kathleen Talbot, M.D. (Tr. 503.) On April 5, 2010, Dr. Talbot completed a physical RFC assessment finding Allgood could stand/walk less than two hours in an eight-hour workday. (Tr. 482.) Dr. Talbot further found that he could sit about fifteen minutes before changing positions.[4] *Id*. She also found, due to back pain, Allgood would have to lie down at unpredictable times during a work shift and that he would be absent from work more than three times per month. (Tr. 482-483.)

Over a year earlier, in August, 2008, a state reviewing physician, Diane Manos, M.D., found that Allgood could stand, walk, and sit each for about six hours in a workday, with unlimited pushing, pulling, reaching and handling. (Tr. 426-432.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[5]

---

[4] Dr. Talbot left blank the amount of time Allgood could sit during a workday.

[5] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the

6

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

The Court first addresses the ALJ's credibility finding. A court must normally defer to the ALJ's credibility determinations. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently

---

record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

7

specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky v. Bowen,* 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.") Beyond medical evidence, there are seven factors that the ALJ should consider.[6] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross*, 373 F. Supp. 2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

In formulating the RFC, the ALJ found that Allgood's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. First, the ALJ quoted Dr. Barker's progress note which indicated: "'[d]id discuss with patient the information that potentially he was selling his drugs on the street and using them illegally' but the claimant 'finally denied that.'" (Tr. 27.) The ALJ also referenced Dr. Talbot's notes indicating that she would no longer prescribe narcotics to Allgood and that she had discharged him as a patient as she believed he was "selling & misusing drugs." (Tr. 28.) The ALJ further noted that Allgood had testified at the hearing that "he changed doctors because of transportation problems and that Dr. Talbot told him that she had stopped prescribing narcotics because he could not get there for testing." *Id.*

The ALJ concluded that Allgood's statements were not credible as follows:

After careful consideration of the evidence, I find that the claimant's medically

---

[6] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, Introduction; *see also Cross*, 373 F. Supp. 2d at 732.

> determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. The claimant's testimony regarding the severity of his back pain is not fully credible. The claimant has exaggerated his symptoms to treating physicians, both of whom concluded that he may be selling or misusing pain medications. The claimant alleged that the medications make him sleepy and groggy, so that he must lie down. However, when he was seen by a psychologist in July 2008, and reported he was taking "Oxycontin 80 mg twice a day, Valium 10 mg three times a day, Percodan 4.5 mg four times a day," he "showed appropriate affective expression with a good range of affect" and "seemed alert and in good contact with reality during the interview," although "he refused to cooperate with the examiner's requests that he perform the examiner's usual cognitive tasks such as Digit Span, counting backwards, saying the alphabet and so on, claiming that his back and head were hurting" (Exhibit B5F pp 4, 5). He reported activities such as riding in the car with his wife to the store; he usually stays in the car but "might get out to stretch" (Exhibit B5F p 5). He mentioned, "every time he sees the police he's scared to death" due to "an incident in which the police started beating him" (Exhibit B5F). He sought treatment at an emergency room after being "tackled" in June 2007 and after jumping a fence in May 2008 (Exhibits 2F and 3F). Although the claimant alleged he could take only a few steps when seen for orthopedic examination on referral in June 2009, he could walk from the parking lot to the psychologist's office without problem in July 2008 (Exhibits B5F and B14F).

(Tr. 28-29.)  Since the ALJ found that Allgood's statements made to his treating physicians were exaggerated, he assigned less weight to their opinions as follows:

> As for the opinion evidence, little weight is given to opinions of Dr. Talbot, who treated the claimant from November 2009 until July 2010. In December 2009 and February 2010, she signed letters stating that the claimant "is unable to work due to heart disease and disabling back pain," the ultimate issue of disability is reserved to the Commissioner (Exhibits B15F and B17F, SSR96-5p). That opinion is not supported by the record as a whole. Little weight is also given to Dr. Talbot's April 2010 opinion that the claimant can lift less than ten pounds, can stand or sit for no longer than fifteen minutes, and would need to lie down at unpredictable intervals, which Dr. Talbot indicated was based on reports of MRI and surgery; Dr. Talbot was provided inaccurate history by the claimant (Exhibit B5F and B18F).

> Great weight is given to the October 2008 opinion of Dr. Barker, the claimant's treating physician for many years, that the claimant can stand or walk two hours in an eight hour work day and one half hour without interruption, can sit one hour without interruption, can lift up to ten pounds occasionally, and is moderately limited as to pushing/pulling, reaching, and repetitive foot movements, and is not significantly limited as to handling. Less weight is given to the opinion that the claimant can sit no more than four hours in an eight hour work day and is "extremely limited" as to bending, which appear to have been based on the claimant's less than credible complaints. The weight of the credible evidence supports the finding that the claimant can bend or stoop frequently, although not continuously, and can sit for up to six hours in an eight hour workday.

> In sum, the above residual functional capacity assessment is supported by the

9

record as a whole.

(Tr. 29.)

The ALJ found Allgood was capable of performing sedentary work "except with a sit/stand option, where he is allowed to sit or stand alternatively, at will, and be off task up to ten percent of the time, with no more than frequent stooping and bending, with no exposure to hazards such as moving machinery and unprotected heights, and with no high production paced work."[7] (Tr. 27.)

It was proper for the ALJ to consider Allgood's alleged drug-seeking behavior in assessing the severity of his pain because, if Allgood's goal was to obtain prescription pain medication, he was more likely to overstate the pain he was actually experiencing. *See Berger v. Astrue*, 516 F.3d 539, 545–46 (7th Cir. 2008) (finding claimant's credibility undermined where he received a regimen of pain medication from two different doctors); *Marrotte v. Barnhart*, 107 F. App'x 14, 16 (8th Cir. 2004) (upholding ALJ's findings discounting plaintiff's credibility because of record of drug-seeking behavior); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that likelihood that claimant was exaggerating complaints of physical pain to "feed his Valium addiction" supported ALJ's decision to reject his testimony); *Morgan v. Astrue*, No. 11–cv–730, 2012 WL 1516755, at *12 (W.D. Wis. May 1, 2012) (finding that ALJ properly relied on the claimant's "drug seeking behavior" in assessing the true severity of her back, neck, and shoulder problems); *Metz v. Astrue*, No. 1:06–CV–1509, 2010 WL 2243343, at *14 (N.D. N.Y. Apr. 21, 2010) ("A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations."); *Booker v. Astrue*, No. 08–5346, 2009 WL 1886134, at *38 (D. Minn., June 30, 2009) ("A claimant's misuse of medications is a valid consideration in an ALJ's

---

[7]Sedentary work is defined as work: "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a) & 416.967(a). Furthermore, Ruling S.S.R. 83-10 suggests that sedentary work will generally involve sitting for six hours out of an eight hour workday. S.S.R. 83-10, *5.

credibility determination and drug[-]seeking behaviors can discredit a plaintiff's allegations of disabling pain."). Courts have found that, even when a claimant may validly require pain medication, an ALJ may still consider a plaintiff's overuse of prescribed medications when assessing the plaintiff's credibility. *See Anderson v. Barhart*, 344 F.3d 809, 815 (8th Cir. 2003) ("While we appreciate [plaintiff's] need for prescribed medications to treat the severe pain caused by his shoulder impairment, we do not think that undercuts the ALJ's finding on [plaintiff's] overuse of medications. A claimant's misuse of medications is a valid factor in an ALJ's credibility determinations.") (citation omitted); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain").

Here, the ALJ's credibility assessment was integral to the RFC determination and to the ultimate finding of non-disability, given that the ALJ did not find the objective medical evidence reflected the degree of pain alleged by Allgood. *See Sears v. Astrue*, 2012 WL 1758843 (D. Vt. May 15, 2012). The credibility assessment was also integral to the weight assigned to the opinion of Allgood's treating physicians.

The ALJ gave less weight to Dr. Talbot's opinion as Allgood provided an inaccurate and exaggerated history. (Tr. 29.) Regarding the weight assigned to Dr. Barker's assessment, the ALJ gave great weight to the finding that Allgood was limited to standing/walking for two hours in a workday. *Id.* The ALJ, however, gave less weight to the finding that Allgood could sit no more than four hours of an eight-hour workday and was "extremely limited" in bending. *Id.* Relying upon the "weight of the credible evidence," the ALJ found that Allgood could perform limited sedentary work. The ALJ appears to have relied, in part, upon the RFC assessment of the state agency reviewing physician, Dr. Manos – that Allgood could sit/stand each for six hours – to reach the conclusion that Allgood could perform sedentary work. However, the ALJ did not mention Dr. Manos' opinion.

Opinions from agency medical sources are considered opinion evidence. 20 C.F.R. § 416.927(f). The regulations mandate that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to

11

the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii).  More weight is generally placed on the opinions of examining medical sources than on those of non-examining medical sources.  *See* 20 C.F.R. §§ 404.1527(d)(1) & 416.927(d)(1).  However, the opinions of non-examining state agency medical consultants can, under some circumstances, be given significant weight.  *Hart v. Astrue*, 2009 WL 2485968, at *8 (S.D. Ohio  Aug. 5, 2009).  This occurs because nonexamining sources are viewed "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  S.S.R. 96–6p, 1996 WL 374180.  Thus, the ALJ weighs the opinions of agency examining physicians and agency reviewing physicians under the same factors as treating physicians including weighing the supportability and consistency of the opinions, as well as the specialization of the physician.  *See* 20 C.F.R. § 416.972(d), (f).

Because the ALJ did not give the treating physicians' opinions controlling weight, he was required to explain the weight he gave to the state agency physician's opinion.  *See* 20 C.F.R. §§ 404.1527(f)(2)(ii) & 416.927(f)(2)(ii).  The ALJ gave great weight to Dr. Barker's finding that Allgood could stand for two hours during a workday, but rejected Dr. Barker's finding Allgood could sit for only four hours.  No rationale was given as to why Dr. Barker's opinion on sitting was due less weight than his opinion on standing.  The ALJ then concluded, again without rationale, that Allgood could sit for six hours in a workday.  It is true that Dr. Manos allowed that Allgood could sit for six hours, but he also allowed that Allgood could stand for six hours.  In any event, the ALJ neither mentioned Dr. Manos' report nor referenced a specific part of the record supporting this assessment.  The ALJ also gave little weight to Dr. Talbot's finding that Allgood could stand or sit no longer than fifteen minutes assessing it as being based upon

12

inaccurate reports by Allgood of surgery and an MRI.[8]

"[A court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). The Court is unable to trace the path of the ALJ's reasoning because the decision fails to mention relevant parts of the record supporting his findings. It is, therefore, recommended that the matter be remanded for a new decision that adequately explains the weight accorded to the medical opinions of record.

### *Carpal Tunnel Syndrome*

Allgood contends that the ALJ erred in concluding that carpal tunnel syndrome was a non-severe impairment. (Doc. No. 14 at 12-17.)

A severe impairment is defined by social security regulations as one which "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not merely by a claimant's statements. 20 C.F.R. §§ 404.1508, 416.908.

The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe."[9] S.S.R. 96–3p, 1996 WL 374181 at *1.

---

[8]Reviewing Dr. Talbot's progress notes, no testing was performed by her. The record reflects that in 2007 the Allen Community Hospital took cervical and lumbar spine x-rays resulting in a diagnosis of sprained neck and back. (Tr. 328, 334, 335.) Allgood points to no other testing performed on these areas. In June, 2009, a one-time treating physician, Domingo Gonzalez, M.D., suggested a "complete study including EMG of both lower extemities, x-rays of the lumber spine and an MRI." (Tr. 458.) Allgood did not follow-through.

[9]The regulations describe a severe impairment in the negative: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental

13

After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576–577 (6th Cir. 2009).

Here, the ALJ explained his reasons for not finding Allgood's carpal tunnel syndrome as severe:

> The evidence as whole indicates that the claimant does not have carpal tunnel syndrome or hand pain of the severity to limit basic work activities. In the August 2007 decision, the Administrative Law Judge noted that the claimant had complained of numbness in the left hand when sleeping in 2001, examination in 2003 showed some discomfort but normal motion and grip strength, electromyography showed moderately severe carpal tunnel syndrome, and a splint was prescribe [sic], but that the claimant had worked until 2005 and had no hand complaints in 2006 (Exhibit BlA pp 10, 11, 15). The claimant alleged only back and leg pain when he filed his current application on June 5, 2008, but indicated on July 16, 2008 that he also has problems with using his hands, along with problems lifting, stair climbing, standing, kneeling, walking, squatting, sitting, and reaching, understanding, seeing, and hearing (Exhibit B2E and B6E p 6). Hand problems were not mentioned when he alleged increased back pain and diabetes in November and December 2008 or when he added heart problems as an alleged impairment in February 2009 (Exhibits BlOE, B1lE, and B13E). The claimant testified that he has pain in both hands and difficulty holding objects such as a pencil long enough to accomplish tasks especially with his dominant left hand, although he has no problem picking up objects. New objective medical evidence regarding the alleged hand problem is limited to March 14, 2008 treatment notes when "left carpal tunnel syndrome" was included at the end of a list of seven diagnoses after the claimant "did complain of some numbness of the left hand and forearm as well as some decrease in his motor strength" and "did have a positive Phalen test, but a negative Tinel test"; the treating physician, Dr. Barker, also noted that the claimant had minimal thenar atrophy and was encouraged to use the wrist brace that he had at home but had not been using; Dr. Barker also noted that the claimant "does need an EMG of both the upper and lower extremities" (Exhibit 21F p 11). However, there was no subsequent note as to symptoms or findings related to the claimant's hands. In April 2010, the claimant's subsequent treating physician, Dr. Talbot, noted of a history of "carpal tunnel surgery" as a basis for limitation of limitation [sic] of handling, fingering and feeling to less than occasionally (Exhibit BI8F p 3). However, Dr. Talbot's history was inaccurate, as the claimant has not had carpal tunnel surgery, and her treatment notes do not include any reference to hand symptoms or a diagnosis of

---

ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a).

> carpal tunnel syndrome (Exhibit 20F). Dr. Barker's findings of positive Tinel's sign and minimal thenar atrophy in March 2008 are not so different from the findings noted in the 2007 decision as to result in a finding that the claimant currently has more than slight or minimal limitation as to use of the left hand in basic work related activities. Thus, while the claimant may have some intermittent pain in his left hand, this is not a severe impairment.

(Tr. 24-25.) The ALJ thoroughly discussed his reasons for finding carpal tunnel syndrome to be a non-severe impairment. As acknowledged by Dr. Barker after testing in 2004, Allgood had "[p]aresthesias of the hands bilaterally, **likely** carpal tunnel syndrome." (Tr. 282, 284) (emphasis added.) Four years later, based only upon Allgood's pain complaints, but without further testing, Dr. Barker assessed carpal tunnel syndrome, but simply recommended Allgood to wear his wrist brace as the doctor had, in earlier appointments, advised him to do. (Tr. 359.) On April 5, 2010, based upon Allgood reporting that he had carpal tunnel surgery, Dr. Talbot found that Allgood was limited in repetitive hand movement because of the surgery. (Tr. 483.) Other than this, there was no further objective medical evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (The opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence.); *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* S.S.R. 96–2p).

The ALJ adequately addressed the symptoms of carpal tunnel syndrome at step two, finding it to be a non-severe impairment. At step four, although the ALJ did not specifically address the carpal tunnel, he noted that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 27.)

Furthermore, it is well established that the plaintiff—and not the ALJ—has the burden to produce evidence in support of a disability claim. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 280 Fed. App'x. 456, 459 (6th Cir. May 29, 2008) (*citing* 20 C.F.R. § 404.15129(a)). *See also*

15

*Struthers v. Comm'r of Soc. Sec.*, 101 F.3d 104 (table), 1999 WL 357818 at *2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment."); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416 .912, 416.913(d)."); *cf. Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) (although an "ALJ has an inquisitorial duty to seek clarification on material facts," a plaintiff, who is represented by counsel, must provide a "factual record" relating to the length of his employment when his past work was part of the record and was the basis of the initial decision to deny benefits). *See also Hayes v. Astrue*, 2011 WL 901013, *5 (S.D. Ohio Feb. 14, 2011).

Other than Dr. Talbot's opinion based upon the inaccurate report that Allgood had carpal tunnel surgery, there is no other medical opinion suggesting work-related limitations stemming from carpal tunnel. Therefore, the ALJ's failure to include additional restrictions at step five was not unreasonable. Allgood merely cites complaints he made and assumes that Dr. Barker's diagnosis automatically means that it must have more than a minimal effect on his work-related activities. This assumption, however, is not grounded in the record.

While carpal tunnel syndrome undoubtedly can result in more than *de minimis* limitations, this is not always the case. In fact, it is well-established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). *See also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

Allgood can be awarded benefits only if proof of his disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his

decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[10]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner should be vacated and the case remanded, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

                                      s/ Greg White
                                      United States Magistrate Judge

Dated:    March 8, 2013

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).** *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**

---

[10]Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

17